**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**SAMANTHA J. F.,**

**Plaintiff,**

**v.**

**Civil Action 2:25-cv-950**
**Chief Judge Sarah D. Morrison**
**Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Samanatha J. F. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 13), and the administrative record (ECF No. 7). For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's non-disability determination and **REMAND** this matter pursuant to Sentence 4 of § 405(g).

## I. BACKGROUND

Plaintiff completed her DIB and SSI applications in January 2019, alleging that she became disabled beginning March 18, 2009. (R. at 1142–43.) Those applications were denied initially and on reconsideration before they were denied at the hearing level by Administrative

Law Judge ("ALJ") Janet Akers in November 2020. (*Id*. at 520–37.) Plaintiff subsequently sought judicial review in this Court but the parties jointly moved for a remand. (*Id*. 3549–53.)

Upon remand, the matter was assigned to ALJ Noceeba Southern ("ALJ Southern") who held a telephonic hearing on January 12, 2023, before she issued a second unfavorable determination in April 2023. (*Id*. at 3486–3512, 3446–75.) Plaintiff again sought judicial review, and this Court remanded the matter a second time. (*Id*. at 6909–24.)

After that second remand, ALJ Southern held another telephonic hearing on May 8, 2025, at which Plaintiff, who was represented by counsel, appeared at testified. (*Id*. at 6846–65.) A vocational expert ("VE") also appeared and testified. On June 3, 2025, ALJ Southern issued a third unfavorable determination, which became final when Plaintiff did not file written exceptions and the Appeals Council declined to review it *sua sponte*.

Plaintiff seeks judicial review of that third unfavorable determination. She contends that ALJ Southern committed reversible error when evaluating opinion evidence from her neurologist. (Pl.'s Statement of Errors 9–16, ECF No. 10.) The undersigned agrees.

## II. ALJ SOUTHERN'S DECISION

ALJ Southern issued the third unfavorable determination on June 3, 2025. (R. at 6809–31.) ALJ Southern initially determined that Plaintiff met the insured status requirements through

June 30, 2023. (*Id*. at 6812.)[1] At step one of the sequential evaluation process,[2] ALJ Southern determined that Plaintiff had not engaged in substantial gainful activity since her March 18, 2009 alleged disability onset date. (*Id*.) At step two, ALJ Southern determined that Plaintiff had the following severe medically determinable impairments: narcolepsy; fibromyalgia; chronic fatigue; Barrettes esophagus; chronic pain; migraines; obesity; lumbar degenerative joint disease; osteoarthritis of the left knee, status post meniscus tear repair; de Quervain tenosynovitis; syncope; hypertension; depression; anxiety; and post-traumatic stress disorder (PTSD). (*Id*. at

[1] For purposes of Plaintiff's DIB application, ALJ Southern only considered those periods during which Plaintiff was insured: April 1, 2014, through December 31, 2016, and July 1, 2020, through June 30, 2023. (R. at 6809.) For purposes of Plaintiff's SSI application, however, ALJ Southern considered the period beginning December 28, 2018, through the date of the determination. (*Id*.) Accordingly, ALJ Southern's determination addressed the following periods: April 1, 2014, until December 31, 2016, and December 28, 2018, through June 3, 2025. (*Id*.)

[2] Social Security regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

> 1. Is the claimant engaged in substantial gainful activity?
>
> 2. Does the claimant suffer from one or more severe impairments?
>
> 3. Does the claimant's severe impairment, alone or in combination with other impairments, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
>
> 4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
>
> 5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

6812.) At step three, ALJ Southern determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

ALJ Southern then set forth Plaintiff's residual functional capacity ("RFC")[3] as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk for four hours and sit for six hours in an eight-hour workday; frequent ramps or stairs; avoid ladders, ropes, or scaffolds; frequent balancing; occasional stooping, kneeling, crouching, and crawling, frequent handling and reaching with the bilateral upper extremities; avoid concentrated exposure to extreme noise, vibration, and bright lights (with noise meaning such that is found at a rock concert; with vibrations meaning such as that with the use of a jackhammer; and with bright lights meaning such as those with the use of construction lights in the evening); avoid hazards, such as moving machinery, heavy machinery and unprotected heights; should avoid positions that require tandem work or over the shoulder supervision; should avoid pace rate work and strict hourly production quotas; should be able to tolerate occasional changes and occasional decision making with few detailed instructions; occasional interaction with coworkers, supervisors, and the public; any changes that are well explained; and would be off task up to 5% of the workday.

(*Id.* at 6817.)

At step four, ALJ Southern determined that Plaintiff did not have any past relevant work. (*Id.* at 6829.) At step five, ALJ Southern relied on the VE's testimony and determined that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform, including the representative jobs of lens inserter, parts inspector, and addressing clerk. (*Id.* at 6830.) ALJ Southern therefore

[3] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations" "on a regular and continuing basis." 20 C.F.R. §§ 404.1545(a)(1), (b)–(c); 416.945(a)(1), (b)–(c).

determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. (*Id*. at 6831.)

## III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Although this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Though the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y of Health & Hum. Serv.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if an ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a

substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV. ANALYSIS

As explained above, Plaintiff contends that ALJ Southern erred when evaluating her neurologist's medical opinion. The undersigned concludes that this contention has merit.

### A. Evaluating Medical Opinion Evidence

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations[4] describe five categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering those categories of evidence: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. *Id.* With regard to supportability "[t]he more relevant the objective medical evidence and supporting explanations presented by a

[4] Because Plaintiff's applications were filed after March 27, 2017, they are subject to regulations governing applications filed after that date.

medical source are to support his or her medical opinion[ ] . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). For consistency, "[t]he more consistent a medical opinion[ ] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[ ] . . . will be." 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2).

**B. ALJ Southern's Evaluation of Dr. Woo's September 2020 Medical Statement**

Here, Plaintiff's neurologist, Dr. Woo, completed a neurology specialist medical statement in September 2020. (R. at 2566–67.)[5] ALJ Southern summarized Dr. Woo's opinions in that document as follows:

> In September 2020, Dr. Woo noted that the claimant would be precluded from performing even basic work activities. Dr. Woo also stated that the claimant would need to take unscheduled breaks 50% of the time and her breaks would need to last for one to three days. Dr. Woo also noted that the claimant would be off task 25% or more of the workday. Dr. Woo also stated that the claimant would be absent from work more than four days per month (Ex. 32F/2).

(*Id*. at 6826.)

ALJ Southern then determined that Dr. Woo's opined off-task and absence limits were not persuasive, writing as follows:

> The undersigned finds these opinions are not supported with thorough explanations or by Dr. Woo's own treatment notes (Ex. 13F; 23F; 32F). Further, treatment notes indicated that the claimant was consistently treated for migraines but they improved with Botox injections (Ex. 2F; 39F; 41F; 67F; 71F). Additionally, despite the claimant's impairments, her physical examination findings were generally normal. Specifically, treatment notes generally indicated that the claimant had a normal gait, but at times, her gait was noted as antalgic (Ex. 16F; 23F; 26F; 36F; 37F; 42F). It was also noted that the claimant's motor strength was generally normal (Ex. 3F; 41F; 42F; 67F). Finally, Dr. Offutt noted that the claimant's cranial nerves II through XII were grossly intact, her cerebellar function was intact, she had a normal gait, and her strength was normal (Ex. 15F).

[5] ALJ Southern also determined that limits opined by Dr. Woo in February and October 2019 were not persuasive. (R. at 6826.) Plaintiff does not challenge those determinations.

(*Id*. at 6826–27.)

C. **ALJ Southern's Supportability Analysis**

Plaintiff challenges ALJ Southern's supportability analysis.[6] (Pl.'s Statement of Errors 11–13, ECF No. 10.) That challenge is well taken.

1. **Lack of Explanation**

As the discussion above demonstrates, ALJ Southern determined that Dr. Woo's off-task and absence limits lacked support for two reasons. First, ALJ Southern explained that they were unsupported because Dr. Woo did not provide "thorough explanations" for them. (R. at 6826.)

But Dr. Woo included significant information in the medical statement. For instance, Dr. Woo wrote that Plaintiff experienced migraine headaches two to four days a week, or eight to sixteen days a month, and that each headache lasted twenty-four to seventy-two hours. (*Id*. at 2566.) Dr. Woo further identified numerus symptoms associate with those headaches including nausea, vomiting, phonophobia, photophobia, throbbing pain, alteration of awareness, mental confusion, an inability to concentrate, mood changes, exhaustion, malaise, vertigo, numbness, visual disturbances, impaired sleep and appetite, weight change, pain with activity, and an avoidance of activity. (*Id*.)

Dr. Woo also documented in the medical statement Plaintiff's history of unsuccessful treatments. (*Id*.) He wrote that Plaintiff had no improvements with physical therapy or standard medications including Topamax, Imitrex, Effexor, Flexeril, Baclofen, Tramadol, Valium, Xanax, Gabapentin, Aleve, and Thalidomide. (*Id*. at 2567.) He further explained that Plaintiff could

[6] Plaintiff also challenges ALJ Southern's consistency analysis. (Pl.'s Statement of Errors 13–16, ECF No. 10.) Because the undersigned concludes that ALJ Southern's supportability analysis was not supported by substantial evidence, the undersigned does not reach that additional challenge. On remand, however, the issue may be addressed if appropriate.

improve her symptoms by taking medications, being in a quiet place or a dark room, and bathing in Epsom salts. (*Id*.)

In short, Dr. Woo described the frequency and duration of Plaintiff's headaches, the symptoms that accompanied them, Plaintiff's failed treatments, and the measures that Plaintiff used to alleviate her symptoms. Consequently, the record does not substantially support ALJ Southern's conclusion that Dr. Woo failed to adequately explain his off-task and absence limits.

**2. Treatment Notes**

Second, ALJ Southern determined that Dr. Woo's off-task and absence limits were not supported by his treatment notes. (*Id*. at 6826.) Substantial evidence does not support that determination either.

Dr. Woo's treatment notes reflect all the following. Plaintiff began experiencing headaches in 2011 two days a week, or eight days a month. (*Id*. at 2251.) Those headaches lasted all day and featured dull stabbing pain behind her eyes that radiated to the base of her skull. (*Id*.) They were accompanied by photophobia, phonophobia, and nausea, and could be triggered by bright lights and certain odors. (*Id*.) In March 2019, Plaintiff condition worsened and she began experiencing headaches four days a week, or twenty days a month. (*Id*. at 2252.) Dr. Woo noted that Plaintiff had failed "multiple standard medical therapies" including the unsuccessful medications that he later described in the September 2020 medical statement. (*Id*. at 2251.)

Plaintiff's symptoms persisted, and, at times, worsened. In April 2019, Plaintiff experienced day-long headaches five days a week, or twenty-five days a month. (*Id*. at 2247.) In May 2019, her symptoms remained "ongoing, without improvement," and Plaintiff experienced a severe worsening of headaches lasting two to five days during which she was bed bound and unable to care for her infant child. (*Id*. at 2234, 2237.) In August 2019, Plaintiff's headaches

were still ongoing, and although medical marijuana transiently improved her symptoms, some types of medical marijuana caused her severe anxiety. (*Id*. at 2225, 2227.)

Plaintiff experienced some improvement in October 2019, when regular use of medical marijuana decreased her headaches from three or four days a week to two days a week and shortened their duration from two days to one day. (*Id*. at 2217.) Even so, Plaintiff's headache diary, which was included in Dr. Woo's records, documented that she had experienced headaches on thirteen days in September 2019 and another thirteen days in October 2019. (*Id*.) Moreover, any improvement did not last. In January 2020, Plaintiff's headaches increased again to five days a week, or twenty days a month. (*Id*. at 2487.) And although Dr. Woo noted that Plaintiff derived significant benefit from medical marijuana, he also noted that she was unable to use it every day due to cost. (*Id*.)

Plaintiff's condition continued to fluctuate but remained severe throughout 2020. In April 2020, both the frequency and severity of Plaintiff's headaches increased as she experienced a headache every one or two days with pain that she rated as eight on a scale of ten. (*Id*. at 2481.) In June 2020, Dr. Woo described Plaintiff's headaches as "still ongoing" and "now worse." (*Id*. at 2475.) And in August 2020, one month before he completed the medical statement at issue, Dr. Woo again noted that Plaintiff's headaches were "still ongoing, without significant sustained improvement." (*Id*. at 2462.)

In sum, Dr. Woo's treatment notes for the eighteen-month period that immediately preceded his September 2020 medical statement provided support for the limits he included in it. Those notes regularly documented headaches occurring multiple days a week, often lasting for an entire day or longer, accompanied by significant symptoms, and persisting despite numerous

attempted treatments. Accordingly, substantial evidence does not support ALJ Southern's determination that Dr. Woo's treatment notes failed to support his opined limits.

* * *

For all these reasons, the undersigned concludes that ALJ Southern's evaluation of Dr. Woo's opinion is not supported by substantial evidence. Dr. Woo explained the basis for his off-task and absence limits in the medical statement and documented in treatment records a history of frequent, prolonged, and treatment-resistant migraines that supported those limits. ALJ Southern's stated reasons for her supportability analysis, therefore, lacked adequate support.

## V. RECOMMENDED DISPOSITION

Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** the Commissioner's non-disability determination and **REMAND** this matter.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report

and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE